UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Michele L. Page</u>

    v.                               Civil No. 08-cv-340-JD
                                      Opinion No. 2009 DNH 025

<u>Michael J. Astrue, Commissioner,</u>
<u>Social Security Administration</u>


O R D E R

Michele L. Page seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's decision denying her application for Social Security Disability Benefits. Page contends that the decision should be reversed because the Administrative Law Judge ("ALJ") ignored Page's mother's testimony at the hearing, improperly evaluated Page's credibility, relied on an outdated residual functional capacity evaluation, erred in failing to contact one of Page's treating physicians to provide a more complete evaluation, failed to properly evaluate her limitations, and ignored the vocational expert's testimony about her work restrictions. The Commissioner contends that the decision should be affirmed.

Background

Page filed an application for Disability Insurance Benefits in February of 2003, claiming a disability as of June 30, 2000, due to anxiety and depression. Her application was denied initially and again following a hearing. When she sought review in this court, the Commissioner filed an assented-to motion to reverse the decision and to remand the case to the ALJ to develop the evidence pertaining to Page's former work and the amounts she earned in each occupation. Page filed a second application for benefits, which was consolidated with the pending application.

The medical record shows that Page was first treated for anxiety at Dover Internal Medicine in May of 1999, where she was prescribed Xanax, Zoloft, medications used to treat major depressive disorder and panic disorder, and encouraged to seek counseling. Her next visit was in February of 2002 following the birth of her daughter. At that time, Cheryl Corrao, PAC, noted that Page had been treated for anxiety in the past but that anxiety was no longer a problem. In August of 2002, however, Page returned with complaints of anxiety, and Corrao prescribed Effexor and Xanax. Corrao noted that Page had had mild anxiety with a history of phobia about leaving her home but had improved with medication through March of 2003. Corrao also noted that Page had not sought counseling.

On May 14, 2003, Thomas Lynch, Ph.D., performed a consultative evaluation of Page.  Lynch noted that Page had emotional difficulties, including panic attacks, and that she had stopped working when her daughter was born.  He also noted that she had become accustomed to staying at home to take care of her daughter and her disabled mother.  Page told Lynch that she was taking correspondence college courses.  Although Page appeared to be somewhat anxious and reported stress related to taking care of her mother and daughter, Lynch found her within normal limits.

Lynch concluded that Page had intact understanding and memory and could perform basic tasks of housekeeping and childcare.  He also found that she had normal social skills and otherwise functioned within normal limits except that she had difficulty maintaining herself outside of her own home.  He diagnosed panic disorder with mild to moderate agoraphobia and adjustment disorder with depressed mood.  Because of a lack of treatment, Lynch stated that Page's prognosis was guarded but noted that if she obtained treatment, she could improve.

On May 28, 2003, a state agency psychologist, Nicolas S. Kalfas, Ph.D., completed a Psychiatric Review Technique Form ("PRT Form") and Mental Residual Functional Capacity Assessment based on a review of Page's file and records.  He relied heavily on Lynch's evaluation.  He found only mild or moderate

limitations.  On the PRT Form, Kalfas indicated that Page suffered from an anxiety-related disorder with recurrent severe panic attacks, which occurred, on the average, at least once a week.  He also checked a box for a "medically determinable impairment . . . that does not precisely satisfy the diagnostic criteria above."  Statement of Facts at 10.  He found that Page could work without unreasonable disruptions if she were given time to adapt to a work environment and provided a somewhat isolated work area in a low stress environment.  He noted Page's difficulty in leaving her home.

   In August and September of 2003, Page was seen by Carla Contarino, Ph.D., for psychological evaluation and treatment with counseling.  Contarino noted that Page was extremely anxious and diagnosed a panic disorder with agoraphobia.  Contarino recommended relaxation techniques and anger management.  On a Medical Assessment of Ability to do Work-Related Activities (Mental) form, Contarino indicated that Page often had difficulty coming to counseling sessions but rated her fair to good in all areas of evaluation.  She also stated that Page had limited ability to relate socially and to maintain focus and performance.  She further stated that Page's anxiety could impair her reliability and predictability.  Contarino diagnosed panic disorder with agoraphobia, finding Page seriously limited in half

4

of the categories rated.  In a letter to Page's attorney, Contarino stated that Page did not attempt to do the prescribed anxiety reduction exercises and did not demonstrate motivation to solve her problems.

Page also continued to treat with Corrao at Rochester Hill Family Practice in 2003 and 2004.  In May of 2004, Corrao completed a Medical Source Statement of Ability to do Work-Related Activities (Physical), in which she noted only one functional limitation, which was an inability to drive due to anxiety.  She also completed a mental impairment questionnaire which stated that Page displayed phobias about leaving her home, had difficulty concentrating, and needed psychiatric care.  Corrao also noted that she had not observed Page's anxiety attacks and that Page was tolerating her medication.

In November of 2004, Page made a report of her daily activities and functioning.  She said that she did not drive because of her medications and that she could not tolerate being in a car or around other people.  She reported that she did housework and took care of her daughter, her mother, and their dog.  She also said that she did not go outside except to take her daughter into the yard and to put the dog out.  She also reported that she had difficulty with memory, understanding,

following instructions, paying attention, getting along with others, and in handling stress and change.

From March through August of 2005, Page was seen by a family practitioner, Dr. Terry Bennett. He prescribed Effexor for anxiety. Dr. Bennett completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on September 27, 2005, in which he found that Page had marked limitations in her ability to do all but four work-related activities.

A hearing was held on Page's first application before ALJ Robert Klingebiel on June 10, 2004. Page was represented by an attorney, and Page's mother, Linda McGhee, attended the hearing. Page did not attend, and her attorney explained she was unable to attend because of her anxiety and agoraphobia. The ALJ issued his decision in September of 2004, denying Page's application for benefits. As is noted above, that decision was reversed and remanded for further proceedings, and Page's subsequent application was consolidated with the first application.

On remand, ALJ Klingebiel held a hearing on October 27, 2005. Page's counsel and her mother attended the hearing, and her mother testified. A vocational expert also testified. McGhee testified that Page had lived with her since 1999 and that at the time of the hearing, Page, her husband, and her daughter all lived with McGhee. She said that Page had worked at

D'Angelos Restaurant until 2000, but that McGhee had to drive her to work because of her panic attacks.  McGhee testified that Page had anxiety and depression, that she would get frustrated and angry, that she would not go out, and that if she were in the car, McGhee would have to stop frequently to let her get out. She also testified that some of the medications made Page tired and did not help her get out of the house.

In questioning the vocational expert about work that a hypothetical person could do with certain limitations, the ALJ described a younger individual, with a high school education, and with no physical limitations.  The ALJ described non-physical limitations as someone who could only do relatively simple transactions or routine tasks, who would need a job that did not require a great deal of team interaction or fast paced work, who would have minimal interaction with the public and co-workers, and who would have only occasional interaction with supervisors. The vocational expert recommended jobs as a telemarketer.  When the ALJ asked about cleaning jobs, the vocational expert answered that many of the jobs require work as a team.  They also discussed other possible work options.

Page's attorney questioned the vocational expert about the requirements of some of the jobs that had been discussed.  The vocational expert testified that if the applicant was unable to

ride in a car and would not leave her home, no employment would be available for her. The ALJ decided that more time was needed to get vocational information.

A supplemental hearing was held on May 3, 2006. McGhee attended the hearing but was not asked to testify, based on Page's attorney's proffer that McGhee would confirm that Page's condition had not changed since the last hearing. Page did not attend. A new vocational expert testified. In response to the limitations posed by the ALJ, the vocational expert testified that such a person could work as an office cleaner, janitorial worker, or chambermaid. At the end of the hearing, the ALJ asked Page's attorney if there were any other medical records that he did not have, and the attorney responded that he was not aware of other records. Page's attorney stated that he had checked with Dr. Bennett and that the only new records were for refilling prescriptions for medication.

The ALJ issued his decision on June 23, 2006. He found that Page had a severe impairment caused by panic disorder with mild to moderate agoraphobia, which did not meet or equal any of the listed impairments. He found that Page's description of her limitations was not entirely credible. The ALJ found that Page retained the residual functional capacity to work in a low stress environment without constant interaction with other people, to

8

occasionally interact with the public, to have occasional social interaction with co-workers and supervisors. He concluded that Page had no relevant past work but that she retained the ability to perform other work in the national economy. Based on those findings, the ALJ determined that Page was not disabled. The Appeals Council denied Page's request for review, making the ALJ's determination the final decision of the Commissioner.[1]

## Discussion

A five-step process is used to evaluate an application for benefits. 20 C.F.R. § 404.1520(a). The applicant bears the burden through the first four steps to show that she is disabled. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Commissioner bears the burden of showing that jobs exist in the national economy that the applicant can perform. Id.

The court's review under § 405(g) is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). If the ALJ's factual

---

[1]On March 2, 2009, Page moved for an extension of time to respond to the Commissioner's motion to affirm. She then filed her response on March 12, 2009. Given the outcome, it is not necessary to consider Page's response.

findings are supported by substantial evidence in the record, they are conclusive, even if other evidence would support a contrary conclusion.  Id.; Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).

A.  Mother's Testimony

   Page's mother, Linda McGhee, testified at the hearing held on October 27, 2005, and attended but did not testify at the hearing held on May 3, 2006.  The ALJ's decision does not mention the substance of McGhee's testimony.  Page contends that the ALJ was required to, but did not, consider her mother's testimony.

   In the process of determining whether a claimant is disabled, an ALJ is required to consider lay witness testimony about the severity of the claimant's limitations and her ability to work.  20 C.F.R. § 404.1513(d)(4); 20 C.F.R. § 404.1529(c)(3); Willcockson v. Astrue, 540 F.3d 878, 881 (8th Cir. 2008); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).  If an ALJ chooses to disregard lay witness testimony, he must give reasons for doing so that are specific to each witness.  Bruce v. Astrue, --- F.3d ---, 2009 WL 539945, at *2 (9th Cir.

Mar. 5, 2009). It is error to ignore completely testimony from witnesses, such as family members, who may be the only ones who observe a claimant's limitations. <u>Willcockson</u>, 540 F.3d at 881.

The ALJ did not mention McGhee's testimony in his decision. The Commissioner asks the court to assume that the ALJ considered McGhee's testimony and also argues the ALJ would have discredited McGhee's testimony for the same reasons that he found Page's statements about her limitations not entirely credible. Neither the legal standard nor the record would support an assumption that the ALJ considered McGhee's testimony. Alternatively, the Commissioner asserts that substantial evidence in the record supports the ALJ's decision, making any failure to consider McGhee's testimony harmless.

B.  <u>Record Evidence</u>

In her disability report, which is dated March 30, 2003, Page wrote that she had anxiety, depression, and panic attacks that kept her from going out of the house and from riding in a car. She wrote that she stopped working because she did not want to go out of the house or to be around people. She explained that she was taking medication, Effexor, which helped somewhat, but that she still was not able to leave the house except for medical appointments.

The ALJ found that Page had a panic disorder with mild to moderate agoraphobia, which could be expected to produce the symptoms Page described but not with the intensity, duration, and limiting effects that Page claimed.  The ALJ found Page's descriptions of her limitations were not entirely credible because she had not followed prescribed treatments at all times, because she was able to care for her daughter competently, because she was able to concentrate and stay focused, and because she was taking a correspondence college course.  In making that assessment, the ALJ relied on notes made by PAC Corrao, Dr. Lynch, and Dr. Contarino.  The ALJ did not credit Dr. Bennett's opinions, finding them unsupported by the record.

The ALJ concluded that Page would be able to work in a low stress environment, with only occasional interaction with the public, with other co-workers but not in the context of work teams or in an environment that required constant and physically close contact with other workers.  The ALJ also found that Page could deal appropriately with supervisors on an occasional basis but not where supervision is constant, frequent, or physically close.  Based on the vocational expert's opinion, the ALJ concluded that Page could work as an office cleaner or as a chambermaid.

Page contends that the ALJ did not properly assess her credibility or the record evidence. Because she did not testify or attend the hearings, the ALJ's assessment of Page's credibility was not based on his personal observations of her. Instead, his credibility assessment merely compared her statements in her disability report with the medical record, an exercise that is equally available to the reviewing court. As a result, the credibility determination is not entitled to the same deference accorded assessments that are made after observing the claimant and hearing her testimony. Cf. Frustaglia v. Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

The record is mixed as to the severity of Page's mental impairments. Her medical records show consistent diagnoses of anxiety, panic attacks, and agoraphobia with temporary periods of improvement. The records also show that she did not consistently comply with her treatment options. Contarino stated in October of 2003 that Page did not try the relaxation techniques Contarino suggested to reduce her anxiety and to allow her to ride in a car in order to attend a social security hearing. Contarino also

stated that Page did not show motivation to overcome her anxiety. In September of 2005, Bennett indicated on a Medical Assessment of Ability to do Work-Related Activities (Mental) form that Page was markedly limited in her abilities as to all but four of the categories.  Bennett, however, did not provide any medical reasons for his assessment.

   McGhee testified in October of 2005 that Page could not drive because of panic attacks, that she could not ride in a car for any distance because of anxiety, and that she had witnessed Page's panic when she tried to leave the house.  McGhee explained that Page did not try Contarino's treatment suggestions, which included taking occasional long car trips and other de-sensitizing activities, because Page felt Contarino was pushing her to do things she could not do.  McGhee testified that Page's inability to leave the house was becoming progressively worse, despite her medication regimen.

    The ALJ relied on Lynch's consultative evaluation, done in May of 2003, to find that Page was able to sustain focus and concentration and was able to do college level work.  He noted Corrao's assessment in August of 2003 that Page could not drive but that she was able to stay focused and took good care of her daughter.  The ALJ ignored Corrao's assessment that Page had difficulty concentrating.  The ALJ referred to Corrao's treatment

note from September of 2004 that Page was "doing well" on her anxiety medication but ignored Corrao's notes that Page's insurance no longer covered a psychologist or psychiatrist.  The ALJ also noted Contarino's negative remarks about Page but misspelled Dr. Contarino's name and referred to her as "he," indicating a less than careful review of the record.  The ALJ concluded that Bennett's evaluation in September of 2005, was entitled to little weight because his findings were contrary to the medical evidence and because Bennett did not provide clinical observations to support his evaluation.

    Although the evaluations include a broad range of information about Page's abilities to do work-related functions, Page's ability to focus, concentrate, and care for her daughter are not the crux of her claimed disability.  Instead, the issue in this case is whether she can or cannot leave her home because of diagnosed panic attacks and agoraphobia.  Page and her mother claim that she cannot.  None of the medical evidence demonstrates that she can leave home, but some of the evidence suggests that she is not taking advantage of treatment options or may lack motivation to improve her functioning ability.  Therefore, the record does not provide strong evidence either way.

    The vocational expert testified that there were jobs Page could do if her agoraphobia and anxiety allowed her to leave home

to work in a low stress job that required only limited contact with the public, co-workers, and supervisors. On the other hand, the vocational expert testified that if Page had great difficulty leaving home and could not tolerate an extended period away from home, she could not work. He also testified that if Page had moderate difficulty in being able to maintain a normal workday and work week, such that she might be absent in a range up to one third of the time, she would not be able to work.

Under the circumstances, the record lacks substantial evidence to support the ALJ's residual functional capacity finding and his conclusion, based on the expert witness's testimony incorporating the residual functional capacity finding, that Page could work as an office cleaner and as a chambermaid. As a result, the ALJ's failure to consider McGhee's testimony was not harmless. Lacking substantial evidence, the ALJ's decision must be reversed.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 9) is granted. The claimant's motion to extend the time to file a response to the Commissioner's motion to affirm the decision (document no. 15) is terminated. The response was not considered in deciding the case. The motion to

affirm (document no. 13) is denied.

The case is remanded under sentence four for further administrative proceedings. ALJ Robert Klingebiel heard the case originally and after the first remand. If the Appeals Council again remands the case to an ALJ for further proceedings, it shall be assigned to a different ALJ.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 16, 2009

cc:   Karen B. Fitzmaurice, Esquire
      Francis M. Jackson, Esquire
      T. David Plourde, Esquire